UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAY A. LOCKHART, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | ) CASE NO.: 1:14-cv-01397-SEB-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

Report and Recommendation on
Complaint for Judicial Review

    This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition.  (Dkt. 19). As addressed below, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Ray A. Lockhart is not disabled.

## Introduction

    Mr. Lockhart applied in October 2011 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that he has been disabled since July 25, 2008, because of physical impairments including vision problems in his right eye.  Acting for the Commissioner of the Social Security Administration following a hearing held March 12, 2013, administrative law judge Monica LaPolt

issued a decision on May 13, 2013, finding that Mr. Lockhart is not disabled. The Appeals Council denied review of the ALJ's decision on August 4, 2014, rendering the ALJ's decision for the Commissioner final. Mr. Lockhart timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Lockhart contends the Commissioner's decision must be reversed and remanded because (1) the ALJ did not properly account for his vision problems in the RFC and (2) her determination that Mr. Lockhart can perform his past relevant work as he had actually performed it or as it is generally performed in the economy is not supported by substantial evidence.

## **Standard for Proving Disability**

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Mr. Lockhart is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

**I.     The ALJ found Mr. Lockhart not disabled at step four.**

Mr. Lockhart was born in September 1953, was 54 years old at the alleged onset of his disability in July 2008, and was 59 years old at the time of the ALJ's decision. Mr. Lockhart has a lengthy work history. He worked for Kroger's dairy operation in various capacities for more than 30 years.

At step one, the ALJ found Mr. Lockhart had not engaged in substantial gainful activity since his alleged onset date. At step two, she identified the following severe physical impairments: asthma, obesity, and reduced vision in the right eye secondary to diabetic neuropathy. At step three, the ALJ found no listings were met. Mr. Lockhart does not challenge the findings at steps one through three. The ALJ next determined Mr. Lockhart's residual functional capacity, i.e., his maximum work capacity despite his impairments and their effect on his functioning. The ALJ found Mr. Lockhart can perform light work with certain postural limitations, certain environmental limitations to accommodate his asthma, and the following limitation to accommodate his vision problem: "no work requiring excellent far acuity, or peripheral acuity on the right." (R. 13).

With this RFC and based on the testimony of a vocational expert, the ALJ found Mr. Lockhart can perform his past relevant work as a "packing line worker," both as he had actually performed it and as it is generally performed in the economy. (R. 20). Accordingly, the ALJ determined at step four that Mr. Lockhart was not disabled and did not reach step five.

## II. The ALJ's step four decision is not supported by substantial evidence.

Mr. Lockhart's primary assertion of error is that the ALJ did not properly account for the vision problems in his right eye as part of the RFC and in her questioning of the vocational expert. This failure, urges Mr. Lockhart, led to the ALJ erroneously determining Mr. Lockhart could perform his past relevant work.

At step four, if a claimant can perform his past relevant work in the manner he had actually performed it *or* in the manner it is generally performed in the national economy, then he is not disabled. *See* Social Security Ruling 82-61; *Getch v. Astrue,* 539 F.3d 473, 482 (7th Cir. 2008) (even if functional demands of the claimant's former job are greater than his capability, if he can perform the demands of that job as it is generally performed, he is not disabled). When the ALJ relies on a vocational expert's opinion whether the claimant is capable of performing his past work, it is essential for her to provide the VE with a complete picture of the claimant's RFC and not omit important information necessary to the rendering of an accurate opinion. *Murphy v. Colvin,* 759 F.3d 811, 820 (7th Cir. 2014).

### A. Mr. Lockhart has limited vision in his right eye.

Mr. Lockhart stopped working in June 2008. At that time, he suffered a vitreous hemorrhage in his right eye, which caused a sudden loss of vision and blurring in that eye. (R. 16). He underwent various treatment, including a vitrectomy and intraocular injections. He has been diagnosed with advanced stage retinopathy in the right eye and, despite treatment, his sight in that eye is not

expected to improve. His vision in the right eye was measured at 20/2000, later at 20/1000 (R. 16), and Mr. Lockhart testified he does not really have any vision on the right side. (R. 39). Fortunately, the vision in his left eye has been measured at 20/25 or 20/30 (R. 16), which allows him to function independently, read, and drive. (*Id.*).

### B. The ALJ gave "great weight" to Dr. Brown's opinion about Mr. Lockhart's vision limitations but did not appropriately incorporate those limits in the RFC or hypothetical to the VE.

A state agency physician who reviewed the medical records, Dr. Roy Brown, concluded in a report dated June 12, 2012, that Mr. Lockhart "has vision in one eye" and "should not do activities that require binocular vision." (R. 339). He also indicated, through a check-the-box format on SSA's functional capacity form with respect to "Visual Limitations," that Mr. Lockhart has "limited" depth perception, but that near acuity and far acuity are "unlimited." (*Id.*). The ALJ stated in her opinion that "Dr. Brown's opinion is given great weight because it is well supported by the evidence and consistent with the record as a whole." (R. 20).

Despite according "great weight" to Dr. Brown's opinion, the ALJ did not include in her RFC a reference to Mr. Lockhart's limited depth perception or state that activities requiring binocular vision are not appropriate. Instead, her RFC and her questions to the vocational expert limited Mr. Lockhart from performing "work requiring excellent far acuity, or peripheral acuity on the right." (*See* R. 13 (opinion); R. 62 (hypothetical question to the VE)). The Commissioner argues that the ALJ's references to a lack of peripheral acuity on the right and the inability to

7

perform work requiring excellent far acuity "mirrors" and "tracks" Dr. Brown's references to limited depth perception and the inability to do work requiring binocular vision.  But she cites no medical or other support for this conclusion.  The Commissioner says it's just plain common sense to equate a lack of peripheral acuity on the right and lack of excellent far acuity with a person's limited depth perception and the lack of binocular vision.  The court has no basis to agree with that say-so.

     Moreover, the court is troubled by the Commissioner's attempts to de-emphasize the ALJ's accord of significant weight to Dr. Brown's opinion by emphasizing opinions in the record the ALJ did not adopt.  The Commissioner stresses that other doctors completed functional assessment forms that contained no limitations because of vision problems.  (*See* Dkt. 18 at pp. 2, 3: "Dr. Whitley [imposed] no visual limitations." "Dr. Sands determined that Plaintiff had no visual limitations." "Dr. Shapiro [who is a pulmonologist and treated Mr. Lockhart's asthma] indicated that Plaintiff did not have visual limitations." "Dr. Kahn [who gave an opinion about limitations related to weight and asthma] did not opine that Plaintiff had limitations due to his vision problems.")

     It is a misrepresentation of the record to suggest the ALJ considered these doctors' lack of a vision limitation.  The ALJ never mentioned these doctors' lack of a visual limitation and, in fact, found these doctors' opinions about other functions, including certain of Mr. Lockhart's physical strength capacities, were not reliable. (*See* R. 19-20 (giving "some weight" to opinions by Dr. Whitley, Dr. Sands, and Dr.

Kahn where "consistent with the record," giving no weight to opinion by Dr. Shapiro, but giving "great weight" to Dr. Brown's opinion—the one doctor who gave an opinion about vision limitations)).

Here, it was critical for the VE to understand the exact nature of Mr. Lockhart's visual limitations. His vision limitations, even as they were described by the ALJ, eliminated entirely from consideration two of the three types of jobs the ALJ identified as Mr. Lockhart's past relevant work and eliminated the remaining job as it is generally performed in the economy.

Mr. Lockhart testified about his three most recent job posts at the Kroger dairy. From about 2000 to June 2008, his work involved overseeing machine-stacking of milk bottles into cases and picking up heavy cases every three or four hours. For two or three years before that, Mr. Lockhart worked in a position he described as "catching cheese." (R. 48-49). This job involved picking up 20-ounce and 24-ounce bars of cheese off of a conveyor belt or roller, stacking them neatly in cases, and pushing the filled cases down the roller. (R. 35). Mr. Lockhart could sit on a stool while performing this cheese stacking job. (R. 50-51). Before the cheese stacking job, Mr. Lockhart made cottage cheese, a job that required using a large wooden mixing paddle. The vocational expert classified these jobs, as generally performed, as at the light or medium level. (R. 60-61). As actually performed, she classified them as requiring medium (milk stacking), light (cottage cheese making), and sedentary (cheese stacking). (*Id.*)

9

The ALJ asked the vocational expert whether Mr. Lockhart could perform his past relevant work if, among other things, he were limited to the full range of light work and could not engage in activities requiring excellent far acuity or peripheral acuity on the right.  (R. 62).  The expert stated Mr. Lockhart could perform only the cheese stacking or packing line job "as he performed it at the sedentary level" because the "light and medium jobs would – other jobs would require, particularly the mixing, would require peripheral vision."  (R. 62).  She reiterated that the cheese stacking job considered at a sedentary level could be done "only as performed."  (R. 63).

The Commissioner contends the vocational expert did not really mean to testify that the ALJ's limitations against right peripheral acuity and excellent far acuity meant the cheese stacking job was eliminated as it is generally performed. She suggests the expert merely "stumbled over her words" or just didn't "clearly testify on this point" (Dkt. 18 at p. 8), but the transcript does not clearly support the Commissioner's reading.  In response to the ALJ's question whether the vision limitations allowed Mr. Lockhart to perform his past work as he had performed it or as it is generally performed, she answered:  "The only job this would allow for would be the packing line worker [i.e., the cheese stacking job] as he performed it at the sedentary level."  (R. 62).  Her further explanation that the light and medium jobs would require peripheral vision ("light and medium jobs would – other jobs would require, particularly the mixing, would require peripheral vision, *id*) is consistent

10

with her elimination of all past work except the cheese stacking job as performed at a sedentary level.

Moreover, even if the VE had not meant to exclude the cheese stacking job as generally performed at a light level because of the right peripheral acuity and excellent far acuity limits, the ALJ's reliance on the VE's opinion of Mr. Lockhart's ability to perform that job lacks the necessary support. The Commissioner attempts to rehabilitate the VE's purported word stumbling about visual limits and the cheese stacking job by looking to the description in the DOT for the job identified by the VE as corresponding to this work. The VE stated the cheese stacking job was "basically a packing line worker" position described at DOT #753.687-038. (R. 60). The Commissioner contends that because the DOT description for this job does not indicate the worker needs peripheral vision and "[i]ndeed, the DOT description indicates that field of vision requirements are 'Not Present' for this job," then it was harmless error for the ALJ to conclude Mr. Lockhart could perform it. (Dkt. 18 at p. 8). The court disagrees.

The packing line worker position identified by the VE has vision requirements that are inconsistent with Dr. Brown's medical opinion about Mr. Lockhart's vision limitations—the very opinion the ALJ accorded "great weight." Recall that Dr. Brown's opinion says Mr. Lockhart "has vision in one eye," "should not do activities that require binocular vision," and has "limited" depth perception. (R. 339). The description for DOT #753.687-038 says the worker needs "Depth

11

Perception: Frequently – Exists from 1/3 to 2/3 of the time." *See* the DOT description for this job available at 1991 WL 680354.

      Because of the ALJ's failure to tell the VE about Mr. Lockhart's limited depth perception and its obvious importance to assembly line work the VE stated was comparable to Mr. Lockhart's cheese stacking job, the court must reverse and remand the Commissioner's decision. *See Jelinek v. Astrue,* 662 F.3d 805, 813 (7th Cir. 2011) ("We have stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity. . . .") There simply is a lack of substantial evidence to support a conclusion that Mr. Lockhart is capable of performing the cheese stacking job as either he actually performed it (his vision was not compromised at the time he performed this job) or as generally performed (the DOT states it requires depth perception).

      It is not necessary for the court to reach Mr. Lockhart's other assertions of error. His complaints that the ALJ (a) did not address all functional requirements of the cheese stacking job as Mr. Lockhart had performed it, particularly the sitting/standing/walking components and (b) irrationally used the assembly-line DOT number supplied by the VE when the DOT describes the job as involving "packing plastic or rubber footwear" and not dairy products are matters that may be addressed on remand.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed in accordance with 28 § U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: August 4, 2015

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system